# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>                Plaintiff<br><br>   v.<br><br>NHS SYSTEMS, INC.,<br><br>   a Pennsylvania corporation, also d/b/a National Healthcare Solutions and National Health Net Online, and<br><br>HARRY F. BELL, JR.,<br><br>   individually and as an officer or principal of NHS Systems, Inc., and<br><br>PHYSICIAN HEALTH SERVICE, LLC,<br><br>   a Missouri limited liability company, also d/b/a/ American Health Benefits On Line, and<br><br>DONNA NEWMAN,<br><br>   individually and as an officer or principal of Physician Health Service, LLC, and<br><br>JOHN E. BARTHOLOMEW,<br><br>   individually, and<br><br>PLUS HEALTH SAVINGS, INC.,<br><br>   a Pennsylvania corporation<br><br>PHYSICIANS HEALTH SYSTEMS, INC., a Delaware corporation, also d/b/a American Health Benefits On Line | CIVIL ACTION<br><br>No. 08-2215 |

HEALTH MANAGEMENT, LLC,
   a Missouri limited liability company

6676529 CANADA, INC.,
   a Canadian corporation

NICOLE BERTRAND,
   individually and as an officer or
   principal of 6676529 Canada, Inc.

BARRY KIRSTEIN,
   individually

"DANNIE BOIE"
   a person whose true identity is
   unknown, individually

PHS ENTERPRISES, INC.,
   a Nevada corporation

FIRST STEP MANAGEMENT, INC.,
   a St. Lucia company

GOLD DOT, INC.,
   a St. Lucia company

LINKE JN PAUL,
   individually and as an officer or
   principal of First Step Management, Inc.
   and Gold Dot, Inc.

TASHA JN PAUL,
   individually and as an officer or
   principal of Gold Dot, Inc.

NEVADA BUSINESS SOLUTIONS,
INC.,
   a Nevada corporation

INTERFACE MANAGEMENT, INC.,

> a Florida corporation, also d/b/a Galaxy
> Member Benefits
>
> BEGINNING AGAIN, INC.,
>     a Florida corporation
>
>                Defendants

**OPINION**

**I.**

**Background**

This litigation was initiated by the Federal Trade Commission ("Commission" or "FTC") in 2008 against numerous corporations and several individuals associated with one or another of the corporate defendants. The gravamen of the Commission's suit is an allegation that the defendants were participants in a widespread telemarketing scheme designed to peddle fraudulent health benefit plans to unsuspecting would-be consumers. On May 14, 2008, at the instance of the Commission, this court entered an *ex parte* Temporary Restraining Order ("XTRO"), dkt. 6, designed to prevent dissipation of the defendants' assets. Key to the court's order were two provisions: (1) a "freeze" on "any assets held by, for or under the name of any Defendant at any . . . ACH network of other payment processor"; and (2) appointment as gatherer and custodian of the defendants' assets, of a Receiver, Wayne Geisser. Three weeks later—on June 10, 2008—this court entered a Stipulated Preliminary Injunction ("SPI"), dkt. 15, which added several more defendants but which, in other respects, largely tracked the earlier order. Thereafter, Receiver Geisser asked Teledraft—a payment-processing firm that handled funds for several of the named defendants, but which is not itself a named defendant—to pay over to

3

Geisser certain funds identified by Geisser to be receivership assets. Teledraft did not comply. The FTC then moved this court for an order compelling Teledraft to pay over to Geisser the disputed funds. On September 24, 2009, this court entered a "turnover order" requiring Teledraft to pay over to Geisser $264,224.03 ("Turnover Order"). This court reasoned that it had authority to issue such a directive to nonparty Teledraft because, while the court was without *in personam* jurisdiction over Teledraft, the XTRO and the SPI provided the court with *in rem* jurisdiction over all receivership funds. *In rem* jurisdiction flowed from 28 U.S.C. §754, which provides that

> [a] receiver appointed in any civil action or proceeding involving property, real, personal or mixed . . . shall . . . be vested with complete jurisdiction and control of all such property with the right to take possession thereof.

Deciding to appeal the Turnover Order, Teledraft moved this court for a stay of the Turnover Order pending appeal. The motion was addressed in an opinion filed on December 10, 2009. Dkt. 119. The opinion explained that this court did not think the Turnover Order was an appealable order within the contemplation of either of the two Federal Rules of Civil Procedure—Rule 62(d) and Rule 62(c)—invoked by Teledraft as authority for a stay. The Turnover Order was an interlocutory order, not a final judgment, and hence outside the purview of Rule 62(d). Rule 62(c), prescribing the procedures governing appeals from orders granting or denying an "injunction" embraces interlocutory as well as final orders, but a turnover order directing the transfer of funds to a receiver is not, ordinarily, conceived of as an "injunction" within the meaning of the Rule. However, this court, in its December 10, 2009 opinion, did have the humility to acknowledge that it was up to the Court of Appeals, not this court, to determine what constitutes an appealable order and, accordingly, whether the Court of Appeals would find

4

that it had jurisdiction to entertain Teledraft's appeal. Accordingly, this court granted a stay of the September 24, 2009 Turnover Order pending the Court of Appeals' determination whether it had jurisdiction over Teledraft's appeal.

On January 8, 2010, the Court of Appeals dismissed Teledraft's appeal for lack of jurisdiction. In a memorandum explaining the order of dismissal, the Court of Appeals said, *inter alia*:

> Although the [Turnover Order] arguably finally disposes of Teledraft's rights to assets, the appeal is premature. Non-parties usually must be held in contempt of district court discovery orders before they have a right to appeal. . . . Because Teledraft has not been held in contempt for refusing to honor FTC's motion to compel requiring it to turn over funds to the receiver, the appeal of the September 25, 2009 order is premature.

Federal Trade Commission v. NHS Systems, Inc. et al., No. 09-3899 (3d Cir. January 6, 2010) (citations omitted).

## II.

## The FTC's Contempt Motion

On March 17, 2010, the FTC filed the instant Motion for an Order to Show Cause Why Teledraft, Inc., Should not be Held in Contempt. Dkt. 125. In its motion, the FTC asks that Teledraft be held in contempt for its failure to comply with the XTRO, the SPI, and the Turnover Order. The FTC further asks that the contempt order require Teledraft to 1) turn over $264,224.03 to the Receiver, as required by the Turnover Order; 2) pay compensatory sanctions in the amount of $105,972.33, which represents the amount the Receiver claims he has expended in attempting to recover funds from Teledraft; and 3) pay a coercive sanction—should Teledraft fail to comply—of $250 on the first day of non-compliance, with the amount doubling on each successive day of non-compliance.

5

In opposition, Teledraft concedes that it should be held in contempt for its failure to comply with the Turnover Order.[1] Indeed, as discussed above, contempt is the only route Teledraft can take to obtain appellate review of the Turnover Order. Still, Teledraft argues that the scope of the contempt order should be narrower than the FTC requests. First, Teledraft contends that it should only be held in contempt of the Turnover Order, and not, as the FTC requests, of the XTRO and SPI as well. Second, Teledraft asserts that this court does not have power to impose any contempt sanctions, either coercive or compensatory. Third, Teledraft argues that, even if the court has the power to impose sanctions, the amounts requested by the FTC are excessive. Finally, Teledraft urges this court to reconsider the Turnover Order on various grounds.[2]

---

[1] Thus Teledraft does not dispute that the requirements for contempt are met. *See Marshak v. Treadwell*, 595 F.3d 478, 485 (3d Cir. 2009) (to establish contempt, movant must prove, by clear and convincing evidence, "(1) that a valid order of the court existed; (2) that the defendants had knowledge of the order; and (3) that the defendants disobeyed the order.").

[2] The court declines to reconsider the Turnover Order. Although "the law of the case doctrine does not limit the power of trial judges to reconsider their prior decisions," *Williams v. Runyon*, 130 F.3d 568, 573 (3d Cir. 1997), such a motion "cannot be used simply to reargue theories on which the court has already ruled . . . or to relitigate a point of disagreement with the court." *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products*, 2011 U.S. Dist. LEXIS 18003, at * 8 (M.D. Pa. Feb. 24, 2011).

Teledraft again asserts (1) that the Receiver failed to comply with 28 U.S.C. § 754 and thus failed to secure *in rem* jurisdiction over Teledraft assets; (2) that Teledraft should only be compelled to turn over $57,328.89; and (3) that Teledraft should be permitted to assert a recoupment action against the Receivership defendants. These contentions are rejected for the reasons stated in the Turnover Order. Teledraft also argues that this court erred in its determination that Teledraft possessed Receivership assets in the Western District of New York. *See* Teledraft Opp'n at 5 n.5. It does not appear that Teledraft raised this argument in its briefing of the Turnover motion, and Teledraft has not presented any justification for its failure to raise the issue. Accordingly, that final ground for reconsideration is also rejected. *See St. Mary's Water Auth. v. St. Paul Fire & Marine Ins. Co.*, 2007 U.S. Dist. LEXIS 34814, at *1 (M. D. Pa. May 11, 2007) (in context of Rule 59(e), reconsideration unavailable where movant "tender[s] new legal theories, or raise[s] arguments which could have been offered or raised prior to entry"

**A. The scope of the contempt order**

Teledraft argues that it should not be held in contempt for violating the XTRO and the SPI because, it asserts, those earlier orders did not apply to Teledraft and that, even if they did, Teledraft did not violate them. This argument is essentially a request that the court reconsider the Turnover Order, in which the court found 1) that both the XTRO and the SPI apply to Teledraft, and 2) that Teledraft had failed to comply with either order.[3] As noted above, *see supra* note 2, the court declines to reconsider the Turnover Order.

Teledraft does present two novel grounds to support its contention that it should only be found in contempt of the Turnover Order. First, Teledraft seems to contend that, because this court did not rule that it had power over Teledraft until the Turnover Order, any contempt finding must be based on the Turnover Order only and can only concern Teledraft's conduct after July 2009. But this argument ignores the fact that the XTRO and SPI unambiguously directed Teledraft to freeze and deliver Receivership assets, in May and June of 2008. Second, Teledraft seeks to reframe the Turnover Order as "extending the scope of the earlier [injunctive orders]," *see* dkt. 127 at 13, and thus again contends that its obligations only began at the time the Turnover Order was issued. This argument also lacks merit. The Turnover Order did not "extend" the XTRO and SPI to Teledraft, it *confirmed* that those orders applied to Teledraft—by their plain language and pursuant to this court's *in rem* jurisdiction.

---

of order).

[3] The plain language of the XTRO and SPI clearly encompass Teledraft. For example, both orders specified that the freeze applied to any "independent contractors" of the defendants, and also to "any assets held by, for or under the name of any Defendant at any . . . ACH Network or other payment processor." XTRO at § II.A.4; SPI at § IV.A; *see also* Turnover Order at 6 ("Although Teledraft is not a party to this litigation, the XTRO and SPI apply to Teledraft.").

Although the XTRO and SPI apply to Teledraft, the court finds it unnecessary to issue a contempt order grounded in Teledraft's non-compliance with those orders in addition to Teledraft's non-compliance with the Turnover Order. The Turnover Order confirms that the XTRO and SPI apply to Teledraft, and thus this court need—at least at this time—only rule that Teledraft is in contempt of the Turnover Order. Accordingly, the accompanying order will note that Teledraft is in contempt of the Turnover Order, and that Teledraft must, in two stages,[4] turn over $264,224.03 to the Receiver.

**B. The power to impose contempt sanctions**

The FTC has requested both compensatory and coercive sanctions. Teledraft argues that this court does not have power to impose contempt sanctions given that this court lacks personal jurisdiction over Teledraft, while the FTC invokes the court's inherent contempt power which, the FTC contends, includes the power to compensate and coerce.[5]

Teledraft relies primarily on the Fifth Circuit's decision in *United States v. Dickinson*,

---

[4] Teledraft concedes that it possesses $57,328.89 of Receivership assets, but it states that the remainder of the $264,224.03 has been dissipated. The court agrees with the FTC that Teledraft should be required to turn over the $57,328.89 promptly, and that Teledraft should be afforded somewhat more time to turn over the balance of Receivership assets. The accompanying order reflects these considerations.

[5] The FTC also seeks to rebut Teledraft's jurisdictional argument by contending that this court will have personal jurisdiction over Teledraft as soon as the FTC serves the Order to Show Cause and contempt order on Teledraft, thus "ensuring personal jurisdiction over Teledraft for purposes of contempt." But even assuming that service of the Order to Show Cause would be sufficient service for the purposes of establishing personal jurisdiction, the FTC would also have to show a sufficient basis (i.e., minimum contacts and reasonableness) for personal jurisdiction. The potential basis for personal jurisdiction over Teledraft was discussed in the briefing in support of the Turnover Order, but this court did not reach the question because it found the service of process to be defective. For the purposes of this motion, the court again need not reach the question of minimum contacts given that its *in rem* jurisdiction is sufficient to sustain the imposition of contempt sanctions.

465 F.2d 496 (5th Cir. 1972). In *Dickinson*, the Fifth Circuit addressed "whether a person may with impunity knowingly violate an order which turns out to be invalid." *Id.* at 509. In answering that question, the court noted that:

> the rule that unconstitutional court orders must nevertheless be obeyed until set aside presupposes the existence of at least three conditions: *(i) the court issuing the injunction must enjoy subject matter and personal jurisdiction over the controversy*; (ii) adequate and effective remedies must be available for orderly review of the challenged ruling; and (iii) the order must not require an irretrievable surrender of constitutional guarantees.

*Id.* (footnote omitted) (emphasis added). Teledraft seeks to import these factors into the context of this case by arguing that this court's earlier finding, that it lacks personal jurisdiction over Teledraft, should now preclude this court from ordering any form of contempt sanctions. As an initial matter, *Dickinson* is distinguishable given that it addressed whether contempt sanctions could be upheld even after the underlying order was reversed on appeal, whereas in this case the underlying orders remain intact.

But even if *Dickinson* does apply to this case, the *Dickinson* court's personal jurisdiction requirement focuses on the court's power to issue the underlying order, rather than on its power to impose sanctions on a non-party. *See id.* ("[T]he court issuing the *injunction* must enjoy subject matter jurisdiction and personal jurisdiction over the *controversy* . . . .") (emphasis added); *see also id.* at 512 ("As a matter of jurisdiction (i), the District Court certainly has power to formulate Free Press-Fair Trial orders in cases pending before the court and to enforce those orders against all who have actual and admitted knowledge of its prohibitions."). This court has already concluded that it has sufficient power, based on *in rem* jurisdiction, to order Teledraft to comply with the underlying orders, and accordingly the *Dickinson* test would be satisfied even if it did apply to this case.

Teledraft's argument in favor of a limited contempt order is further undermined by the long-standing principle that courts enjoy "inherent power to enforce compliance with their lawful orders through civil contempt." *Spallone v. United States*, 493 U.S. 265, 276 (1990). The contempt power includes the power "to coerce the defendant into compliance with the court's order and to compensate for losses sustained by the disobedience." *McDonald's Corp. v. Victory Investments*, 727 F.2d 82, 87 (3d Cir. 1984). Here, Teledraft's proposal—that the contempt order be limited to requiring delivery of the $264,224.03—would eviscerate the purposes underlying contempt (i.e., to enforce compliance with orders), and would reduce contempt to a means of facilitating appellate review. In other words, Teledraft simply asks this court to repeat its earlier command that it turn over the Receivership funds, which would render the contempt order a nullity.

Moreover, Teledraft's proposal would be at odds with the Third Circuit ruling in this case that found that Teledraft could not appeal the Turnover Order. In dismissing Teledraft's appeal, the Third Circuit noted that a "'contempt order effectively transforms the 'interlocutory' [order] into the 'final' [order] by giving the [nonparty] witness a distinct and severable interest in the underlying action.'" FTC v. NHS Systems, Inc. et al., No. 09-3899 (3d Cir. Jan. 8, 2010) (quoting *In re Flat Glass Antitrust Litig.*, 288 F.3d 83, 89 (3d Cir. 2002)). *In Re Flat Glass* and the other cases cited by the Third Circuit recognized that the contempt requirement serves to "discourage appeals in all but the most serious cases." *Id.* at 90 n.10 (quoting *In re Grand Jury (Schmidt)*, 619 F.2d 1022, 1025 (3d Cir. 1980)); *see also id.* at 89 ("'[T]he contempt route is a difficult path to appellate review, and one that may carry with it a significant penalty for failure.'") (quoting *MDK, Inc. v. Mike's Train House, Inc.*, 27 F.3d 116, 121 (4th Cir. 1994)).

In this case, Teledraft asks the court to issue a contempt order that would fail to "discourage

appeals." Absent the possibility of sanctions, there is little to discourage a party from standing in contempt of, and then appealing, any adverse order. In other words, Teledraft's "for appeal purposes only" contempt theory would turn contempt into an empty formality.

In sum, the court finds that it has the power to impose contempt sanctions on Teledraft. Personal jurisdiction is not a prerequisite to imposing such sanctions in this case, and sanctions are, moreover, an inherent facet of the contempt power. Finally, a sanctionless contempt order would undermine the policies underlying the requirement that a nonparty must be held in contempt before appealing a court order. Accordingly, the court will exercise its discretion to determine the type and amount of sanctions that are warranted in this case.[6]

**C. Compensatory Sanctions**

The FTC has asked for at least[7] $105,972.33 in compensatory sanctions, designed to refund the Receiver for the costs he has incurred in seeking to gain Teledraft's compliance with the injunctions. Teledraft argues that compensatory sanctions are only available to compensate the aggrieved party for costs associated with the contempt proceedings themselves. Thus, Teledraft argues, because the Receiver has not expended any funds associated with the contempt motion,[8] the Receiver is not entitled to any compensatory fees.

---

[6] The FTC has stated that, should Teledraft file a timely and prompt appeal, it will not oppose a stay of the compensatory sanctions (and tolling of the coercive sanction), provided that Teledraft post a bond in the amount of 120% of the $264,224.03, plus the amount of any sanctions imposed. Teledraft has expressed a willingness to post such a bond, and Teledraft is of course permitted to move this court for a stay of the compensatory sanctions pending appeal.

[7] The Receiver has sought to reserve his right to supplement his submission to reflect additional time and expenses. Dkt. 125 at 7 n.4.

[8] The FTC has handled the briefing on the contempt motion, and the Receiver has filed a one-page notice stating its agreement with the FTC's position. Dkt. 126.

Teledraft's restrictive theory of the scope of compensatory sanctions relies on the Third Circuit's statement that "[compensatory sanctions] are restricted to reasonable amounts incurred in prosecuting the [contempt] petition." *Lichtenstein v. Lichtenstein*, 425 F.2d 1111, 1113 (3d Cir. 1970). But Teledraft's interpretation of what it means to "prosecute the petition" is overly-narrow. *Lichtenstein* cited, in support of the above proposition, *Schauffler v. United Ass'n of Journeymen*, 246 F.2d 867 (3d Cir. 1957), which described compensatory sanctions as including those costs "necessarily incurred . . . in connection with the prosecution of the petition in civil contempt, including counsel fees and other expenditures incurred in the investigation, preparation, presentation and final disposition of the petition." *Id.* Although the court has not yet received an itemized account of the expenses that underlie the FTC's sanction request, it is at least possible that some expenses are attributable to "investigation" and "preparation" of the petition.

Moreover, "district courts are afforded broad discretion to fashion a sanction that will achieve full remedial relief," and "[o]ften this discretion involves ordering payment for the costs of past non-compliance . . . ." *John T. v. Del. Cnty. Intermediate Unit*, 318 F.3d 545, 554 (3d Cir. 2003). Thus compensatory sanctions are available not only for litigation costs associated with the contempt proceedings, but are also more broadly available "to compensate for losses sustained by disobedience." *McDonald's Corp.*, 727 F.2d at 87; *see also Nat'l Drying Mach. Co. v. Ackoff*, 245 F.2d 192, 194 (3d Cir. 1957) ("Whether an award in civil contempt be measured in terms of a plaintiff's loss or a defendant's profit, such an award, by very definition, must be an attempt to compensate plaintiff for the amount he is out-of-pocket or for what defendant by his wrong may be said to have diverted from the plaintiff or gained at plaintiff's expense.").

In sum, the Receiver is entitled to receive compensatory sanctions for losses arising from Teledraft's disobedience. The accompanying order will refer this matter to the Honorable M. Faith Angell, United States Magistrate Judge, for a determination of the appropriate amount of such compensatory sanctions.

**D. Coercive Sanctions**

The FTC also requests a two-tiered coercive sanction. First, it asks that Teledraft be ordered to turn over $57,328.89—the amount of Receivership property Teledraft concedes it possesses—within 48 hours of the entry of a contempt order. The FTC then asks that the remainder of the $264,224.03 be turned over within one week of a contempt order. If Teledraft fails to meet either of these deadlines, the FTC asks that Teledraft be fined $250 on the first day of noncompliance, with the fine amount doubling each day thereafter.

Although such coercive sanctions are not uncommon, *see, e.g., FTC v. Productive Mktg.*, 136 F.Supp.2d 1096, 1113 (C.D. Cal. 2001), the court declines to impose coercive sanctions in this case. It is apparent that Teledraft's primary goal at this stage in the litigation is to obtain appellate review of the Turnover Order and, at this point, there is no reason to believe that Teledraft will not file a timely appeal. Accordingly, the accompanying order will impose a deadline for the turnover of funds, but the order will not impose per diem coercive sanctions. If Teledraft fails to comply with or appeal the contempt order, the FTC may file a renewed request for additional sanctions.

**III.**

**Conclusion**

Teledraft has knowingly refused to comply with a lawful order of this court, and thus is in

contempt. Moreover, the court's power to impose sanctions is not precluded by the lack of personal jurisdiction over Teledraft. Accordingly, the court will impose compensatory sanctions in an amount to be determined by the Magistrate, but the court declines, at this time, to impose coercive sanctions. An appropriate order accompanies this opinion.