**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** | |
| Plaintiff, | **Civ. Action No.** 08-cv-2215 |
| v. | |
| **NHS SYSTEMS, INC.,** *et al.,* | |
| Defendants. | |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
AGAINST THE NHS/PHS DEFENDANTS**

Almost a year after Plaintiff the Federal Trade Commission ("FTC") filed its Motion for

Summary Judgment Against the NHS/PHS Defendants (Doc. #136, the "Motion"), Defendants

Linke Jn Paul and Tasha Jn Paul have responded.  (Docs. #196 ("TJP Resp."), #197 ("LJP

Resp.").)  The Jn Pauls ostensibly seek to "clarify" some matters, but they do not submit or cite

any evidence to contradict the documentary materials, deposition testimony, and declarations

relied upon by the FTC in support of the Motion.  The Jn Pauls' responses do not present any

genuine issue of material fact to defeat summary judgment.  Moreover, despite the additional

Notice that drew the Jn Pauls' responses (see Docs. ##180-1, 190), no other defendant has

offered any opposition to the Motion.[1]  Accordingly, the supported facts set forth in the Motion

should be taken as true for purposes of resolving the Motion.  On those facts, summary judgment

is appropriate.

---

[1]  After receiving the Notice (Doc. #180-1), Defendant David James Greer (a/k/a "Dannie
Boie") requested an additional extension of time to respond to the Motion until October 17,
2011, which was unopposed and granted by the Court.  (Docs. ##198, 201, 202.)  However,
Greer did not file any response within the extended period.

The Jn Pauls also ask this Court not to impose injunctive relief that would prevent them from continuing in their chosen profession of telemarketing, and argue that they are not subject to liability for equitable monetary relief.  The history of the NHS/PHS enterprise is so egregious that any injunctive relief short of that requested by the FTC would place consumers at risk of further abusive and deceptive tactics.  Moreover, the defendants' controlling roles and long involvement in the scheme warrant a judgment for full equitable monetary relief against them.

## I.     SUMMARY JUDGMENT AND LIABILITY STANDARDS

The original Memorandum in Support of Plaintiff's Motion for Summary Judgment Against the NHS/PHS Defendants set forth the standards for summary judgment, generally, and for liability on the allegations of the Amended Complaint, specifically.  (SJ Mem. (within Doc. #136) at 38, 41-43, 47-53, 62-65.)[2]  Those matters need not be repeated in full herein, but for the convenience of the reader certain aspects of those standards bear focus in this reply.

### A.     Unsupported Denials Do Not Prevent Summary Judgment.

The Notice (Doc. #180-1) issued by the Court and delivered by the FTC to the pro se NHS/PHS Defendants described in plain language what would be required to oppose the Motion effectively:

> The FTC has set out numerous factual assertions in connection with its motion for summary judgment.  These factual assertions will be taken as true by this court unless you contradict the FTC with counter-affidavits or other evidence to show that there is a genuine issue of material fact for trial.  If you do not submit your

---

[2]  As used in this Reply, citations to the summary judgment memorandum ("SJ Mem.") are intended to refer not only to the text of the memorandum, but also to the evidence cited in support of that text.  Citations directly to evidentiary submissions use the same abbreviations as used in the summary judgment memorandum.  (See SJ Mem. at 4 n.4 and accompanying text.)  In addition, abbreviations referring to parties and non-party actors are the same as those used in the summary judgment memorandum.  See, e.g., SJ Mem. at 3 nn.1-2.

own evidence contradicting one or more of the plaintiff's material factual
allegations, summary judgment, if appropriate, may be entered against you.

(Doc. #180-1.)

Notwithstanding this clear notice, the Jn Pauls' responses to the FTC's motion for

summary judgment consist of unsupported assertions and denials without specific citations to

any record evidence.[3]  Their failure to contradict the FTC's material factual allegations with

counter-affidavits or other evidence is tantamount to no response at all.  Summary judgment thus

may be awarded against them and for the FTC.  *See Johnson v. St. Clare's Hosp. & Health Ctr.*,

96 Civ 1425 (MBM), 1998 U.S. Dist. LEXIS 5976, at *23-24 (S.D.N.Y. Apr. 30, 1998), *aff'd

without op.*, 175 F.3d 1008 (2d Cir. 1999) (pro se party's post-warning response without citation

to evidence insufficient to create genuine issue of material fact).  *See also Randle v. Vitale*, Case

No. 09-cv-535-DRH, 2010 U.S. Dist. LEXIS 111229 (S.D. Ill. Oct. 19, 2010) (entering summary

judgment in defendant's favor when pro se plaintiff, after having received a notice similar to the

one above, failed to respond); *Aresaba v. Walls*, Case No. 03-cv-167-GPM, 2005 U.S. Dist.

---

[3]  Tasha Jn Paul makes one reference to her "FTC testimony."  (TJP Resp. at 3.)  This is a
reference to a deposition she gave in the Philippines in late August 2010 in a different FTC case
against her.  *See FTC v. Grant Connect, LLC*, No. 2:09-CV-01349-PMP-RJJ, 2011 U.S. Dist.
LEXIS 123792 (D. Nev. Oct. 25, 2011).  That deposition occurred after the general close of
discovery in this matter (although discovery had been extended for limited other purposes).
Accordingly, the FTC did not rely on it for purposes of summary judgment in this case.  Tasha
Jn Paul cites it here only for one point:  to emphasize her denial that her purchase of airline
tickets and move to the Philippines immediately after her husband and co-defendants were
served with the Amended Complaint was anything other than a coincidence.  (SJ Mem. at 36-38;
TJP Resp. at 3.)  This denial does not create any genuine issue of material fact for purposes of
the Motion.  However, should the Court request, the FTC will provide the full transcript of the
deposition, which was filed as an exhibit to the FTC's motion for summary judgment in the
*Grant Connect* matter.

LEXIS 13806, at *5, 17 (S.D. Ill. July 5, 2005) (magistrate judge's report and recommendation

advising entry of summary judgment under same circumstances).[4]

> **B.      Neither "Intent to Deceive" nor "Direct Knowledge" are Required to Establish Liability for Injunctive and Monetary Relief.**

Both of the Jn Pauls' responses assert that the FTC has not sufficiently shown that either

defendant had an "intent to deceive" or "direct knowledge of the claimed deceit."  (TJP Resp. at

2, 4; LJP Resp. at 2, 3.)  Putting aside for the moment that the evidence does not reasonably

support any other inference, it is worth re-emphasizing that liability for unfair and deceptive acts

or practices under the FTC Act requires no proof of intent or "direct knowledge."

> **1.      Intent is not an element of liability under the FTC Act.**

Liability for deception under Section 5 of the FTC Act arises from any material

representation, practice, or omission, likely to mislead consumers acting reasonably under the

circumstances.  *In re Cliffdale Associates, Inc.*, 103 F.T.C. 110 (1984); *FTC v. World Media

Brokers,* 415 F.3d 758, 763 (7th Cir. 2005); *FTC v. Tashman,* 318 F.3d 1273, 1277 (11th Cir.

2003); *FTC v. Millenium Telecard, Inc.*, Civil Action No.: 11-2479 (JLL), 2011 U.S. Dist.

LEXIS 74951, at *8 (D.N.J. July 12, 2011); *FTC v. Hope Now Modifications, LLC,* Civil No. 09-

1204 (JBS/JS), 2010 U.S. Dist. LEXIS 35550, at *3 (D.N.J. Apr. 12, 2010); *FTC v. Chinery,*

Civ. No. 05-3460 (GEB), 2009 U.S. Dist. LEXIS 22958, at *10, 12 (D.N.J. Mar. 23, 2009).  As

the focus of the statute is on the protection of consumers, Section 5 does not have a threshold

intent element; to be actionable, a misrepresentation or deceptive practice need not be made with

---

[4]  In requiring delivery of the Notice to the pro se defendants, the Court cited case law
from the Second and Seventh Circuits.  (Doc. #180.)  Accordingly, the citations here are to cases
from within those circuits, applying that case law.

an intent to deceive.  *Regina Corp. v. FTC*, 322 F.2d 765 (3d Cir. 1963); *Millenium Telecard,*
2011 U.S. Dist. LEXIS 74951, at *9.

The elements of liability for unfairness under the FTC Act are threefold: (1) the act or
practice must cause substantial consumer injury that (2) consumers themselves could not
reasonably have avoided; and (3) the injury must not be outweighed by countervailing benefits
to consumers or competition. 15 U.S.C. § 45(n).  *See also FTC v. Neovi, Inc.,* 604 F.3d 1150,
1155 (9th Cir. 2010); *FTC v. Accusearch Inc.,* 570 F.3d 1187, 1193 (10th Cir. 2009); *Orkin
Exterminating Co., Inc. v. FTC*, 849 F.2d 1354 (11th Cir. 1988); *FTC v. J.K. Publications*, 99 F.
Supp. 2d 1176 (C.D. Cal. 2000); *FTC v. Windward Marketing, Ltd.*, Civil Action No. 1:96-CV-
615-FMH, 1997 U.S. Dist. LEXIS 17114 (N.D. Ga. Sept. 30, 1997).  Like its counterpart
standard for deception, the unfairness test does not require the court to take into account the
mental state of the party accused of a Section 5 violation.  A practice may be found unfair to
consumers without a showing that the offending party intended to cause consumer injury.  *E.g.*,
*FTC v. Neovi, Inc.*, 604 F.3d at 1156-57.

### 2.      Willful ignorance is no defense to individual monetary liability.

It is true that there are heightened scienter requirements for an award of equitable
monetary relief against an individual under the FTC Act.  But no proof of "direct knowledge" or
intent is required to support an award of monetary relief against an individual actor.

As set forth in the summary judgment memorandum (SJ Mem. at 52-53), once the FTC
demonstrates threshold liability, it may establish the individual defendants' personal liability for
equitable monetary relief by showing (1) that they participated directly in the deceptive practices
or acts or had authority to control them, and (2) that they had some knowledge of the
corporation's improper practices.  *FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1204 (11th

Cir. 2005); *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 573 (7th Cir. 1989); *FTC v. Holiday Enter., Inc.*, 1:06-CV-2939-CAP, 2008 U.S. Dist. LEXIS 35858, at *25 (N.D. Ga. Feb. 5, 2008).

When evaluating whether an individual defendant had the requisite "authority to control" to meet this standard, courts evaluate both formal authority and practical control.  "Authority to control the company can be evidenced by active involvement in business affairs and the making of corporate policy, including assuming the duties of a corporate officer." *Amy Travel, supra*; *see FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1170-71 (9th Cir. 1997) (requisite authority found where defendant was president and had authority to sign documents on behalf of the corporation); *FTC v. FTN Promotions, Inc.*, 2008 WL 821937, at *2 (M.D. Fla. March 26, 2008) (quoting and following *Amy Travel*); *Holiday Enter.*, 2008 U.S. Dist. LEXIS 35858, at *25 (N.D. Ga. Feb. 5, 2008) (status as a corporate officer gives rise to a presumption of authority to control).

As to the second prong of the test for individual monetary liability, the knowledge requirement does not demand proof of direct knowledge.  It may be satisfied by evidence that the individual had "actual knowledge of material misrepresentations, reckless indifference to the truth or falsity of such misrepresentations, or an awareness of a high probability of fraud along with an intentional avoidance of the truth." *Amy Travel*, *supra*, 875 F.2d at 574; *see FTN Promotions, supra*; *Holiday Enter., supra*.   Showing a specific intent to deceive is not required. *Amy Travel, supra*; *FTN Promotions, supra*; *Holiday Enter., supra*, 2008 U.S. Dist. LEXIS 35858, at *17.

## II.    THE JN PAULS' DENIALS DO NOT CREATE ANY GENUINE ISSUE OF MATERIAL FACT

The evidence cited in support of the Motion establishes that both Jn Pauls were integral and high-ranking participants in the NHS/PHS enterprise.  While their responses attempt to minimize their roles by focusing on aspects of the scheme that were executed by others, neither of the responses raises any genuine issue as to the core facts on which their liability is predicated.

Before addressing undisputed evidence concerning the Jn Pauls' individual roles, it is worth revisiting two points about the NHS/PHS enterprise that the Jn Pauls choose not to confront in any meaningful way in their responses.  <u>First</u>, not a single charge to any consumer in the course of the NHS/PHS business was supported by competent evidence that it was authorized.  (SJ Mem. at 15-22.)  This is undisputed.  The Jn Pauls do not take issue with this point, they only suggest that accurately justifying the lawfulness of millions of dollars in charges against consumer bank accounts – in the face of massive numbers of complaints – was someone else's responsibility.[5]

<u>Second</u>, there is no dispute that deception was rampant and permeated the enterprise's dealings with consumers.  (SJ Mem. at 22-24.)  Indeed, in her response Tasha Jn Paul tacitly admits that the verification recording process was not designed to protect *consumers* from deception, but to "safe guard the *company owner* from any possible deception or misleading

_____

[5]  Tasha Jn Paul asserts, without evidence, that "All calls where [sic] listened to 100% as it was contracted with the Florida IVR Company.  This ensured that any consumer charged was 100% verified to the client approved script."  (TJP Resp. at 2.)  This unsupported assertion is patently false, as demonstrated beyond question by the case of Morris McCall, and takes no account of the declarations, testimony, and consumer complaints that overwhelmingly establish the pattern of unauthorized charges.  (SJ Mem. at 1-2, 16-20, 22-24.)

information given to any customer generated from the call center company." (TJP Resp. at 2 (emphasis added).)[6] The undisputed evidence demonstrates that the NHS/PHS enterprise was structured to permit – and even encourage – pervasive deception of consumers, so long as superficial verification recordings were generated to respond to payment processors' inquiries and to be used against consumers who had been victimized.

Thus, the thoroughly unlawful nature of the acts and practices of the NHS/PHS enterprise – both unfair and deceptive – is established beyond dispute.[7] By their responses, the Jn Pauls do not seek to excuse the enterprise, only themselves.

### A.   Undisputed Evidence Demonstrates that Linke Jn Paul Had a Substantial and Authoritative Role in the NHS/PHS Enterprise.

While Linke Jn Paul's response makes some rhetorical effort to distance him from a few aspects of the scheme, it fails to grapple with direct and undisputed evidence that he had a critical role and substantial authority. To recap, the following facts are uncontroverted:

- Linke Jn Paul was the sole director of First Step Management, Inc. (FSMI), a St. Lucia company formed expressly for the purpose of "Providing Information For US Government Grants And Health Care Services." (SJ Mem. at 10, 14, 59-60.)

---

[6] Furthermore, it is undisputed that the recordings were not intended in any manner to capture the sales pitches. (SJ Mem. at 57 n.213, citing Br. Tr. 117-18 and Br. Ex. 8; see especially Br. Ex. 8 at FTC-NHS-0001884/3 ("There is an initial conversation that goes on between NHS and the customer which is not recorded. If the client agrees to purchase the product, then the recording begins.").)

[7] It is also undisputed that the enterprise's various companies formed a "common enterprise" for purposes of FTC Act liability. (SJ Mem. at 25-33, 42-45.) The Jn Pauls do not respond on this point.

8

- Linke Jn Paul was a director of Gold Dot, Inc., a St. Lucia company formed expressly for the purpose of "Providing Internet Sales And Telemarketing Services." (SJ Mem. at 10, 14, 59-60.)

- Over one million dollars in funds taken from consumers by the NHS/PHS enterprise were transferred directly to FSMI, and hundreds of thousands of dollars were transferred directly to Gold Dot. FSMI was the largest single recipient of transfers from accounts managed through the NHS/PHS enterprise, and Linke Jn Paul was the St. Lucia point of contact for those transfers. (SJ Mem. at 10, 14, 59-60.)

- Linke Jn Paul's wife, Tasha, worked for FSMI and Gold Dot. Using the pseudonym "Erika Roberts," she oversaw the telemarketing and customer service operations of the NHS/PHS enterprise. She also participated with co-defendant Barry Kirstein in decisions as to how enterprise profits were split. (SJ Mem. at 10, 13, 25-27, 43-44, 54-59.)

- Co-defendant David James Greer (using the pseudonym "Dannie Boie") worked for Linke Jn Paul's FSMI. Initially, Greer supervised "the rooms and the sells," and later he also supervised customer service. (SJ Mem. at 10, 13-14, 27, 29, 44, 58-59 (quotation from Br. Ex. 14).)

- Linke Jn Paul's FSMI, through Tasha Jn Paul and Greer, was responsible for supervision of the outbound telemarketing operations of the NHS/PHS enterprise. (SJ Mem. at 10, 25-27, 29, 32, 56-60.)

- The "Customer Service and Compliance" duties within the NHS/PHS enterprise were allocated to an employee of Linke Jn Paul's FSMI. In the structure of the

9

NHS/PHS enterprise, all complaint letters concerning deceptive marketing and unauthorized charges were forwarded to FSMI in St. Lucia.  Inbound consumer complaint calls were handled by telemarketers in the Philippines, also supervised by FSMI.  (SJ Mem. at 25-26, 56-59.)

- When the NHS/PHS enterprise resumed deceptive telemarketing practices in early 2009, the form contracts for telemarketing rooms identified Linke Jn Paul's FSMI as the party with whom telemarketing rooms were to contract.  (SJ Mem. at 32.)

- Neither of the Jn Pauls so much as suggest that FSMI or Gold Dot engaged in business outside the NHS/PHS enterprise.  FSMI and Gold Dot's revenues were tied inextricably to the mass unauthorized charging activities of the enterprise.[8] The close ties between the unauthorized charging activities of the NHS/PHS enterprise and the revenues to the Jn Pauls' businesses are particularly well illustrated by the example bank records cited in PX 24 (Vantusko SJ NHS/PHS) at ¶¶ 4-16 (citing Atts. A-H thereto).  (SJ Mem. at 10, 57-58.)

The sum of these undisputed facts is that Linke Jn Paul had complete authority over major aspects of the NHS/PHS enterprise.  His companies supervised contacts with consumers from lead generation, to outbound calls, to verification recordings, to inbound complaints.  FSMI

---

[8]  The FTC does not dispute that Linke Jn Paul's companies left to others the mechanics of charging the bank accounts of consumers in the databases described in the Motion, as well as the critical job of managing relationships with payment processors.  But there is also no dispute that those charges were purportedly backed by worthless voice verifications generated and maintained under the supervision of Linke Jn Paul's companies.  (SJ Mem. at 16-17, 43; Br. Ex. 4; Br. Ex. 14.)

received all written consumer complaints in its offices in St. Lucia, and directed telemarketers in the Philippines regarding the handling of consumers' telephonic complaints.  The overwhelming evidence is such that, if Linke Jn Paul did not have "direct knowledge" of the enterprise's deceptive tactics and widespread unauthorized charging practices, his ignorance could only have been the result of a willful effort or design.  Indeed, it is impossible to reconcile the very purpose of his companies – viewed in combination, the telemarketing (Gold Dot) of "US Government Grants" (FSMI) – with any express or implied claim that he was unaware of representations of government affiliation or offers of grants in the enterprise's telemarketing operations.

**B.     Undisputed Evidence Demonstrates that Tasha Jn Paul Had a Substantial and Authoritative Role in the NHS/PHS Enterprise**.

Even as Linke Jn Paul undisputedly had plenary authority over FSMI and Gold Dot through his directorships and by controlling their funds, it is similarly undisputed that his wife Tasha Jn Paul had authority over those entities as a de facto chief executive.[9]  As co-defendant Nicole Bertrand testified, Tasha Jn Paul was "the boss of First Step" and managed "her team at Gold Dot."  (Br. Tr. at 191-92 (FSMI), 115 (Gold Dot).)[10]

---

[9]  The evidence shows that Tasha Jn Paul was a director of Gold Dot, at least when it was formed in May 2005, though Linke Jn Paul asserts that he was the only director of that company. (SJ Mem. at 10 (citing PX 17 (Supplemental Vantusko) at ¶ 35); LJP Resp. at 2.)  Whether Tasha Jn Paul was a director of the company or a general manager of operations is of no material import – her involvement and authority in Gold Dot and the NHS/PHS enterprise as a whole were unquestionably substantial.

[10]  In attempting to minimize her role, Tasha Jn Paul claims that she "was an employee who garnered at most a $1,000 in a weekly salary" and "stopped working with any Defendant companies at the start of the 2008."  (TJP Resp. at 3.)  These unsupported denials are directly contradicted by the evidence.  In the period from January through May 2008, Tasha Jn Paul received FSMI and Gold Dot wire transfers into her Bank of America account (alone) totaling more than $80,000.  (PX 24 (Vantusko SJ NHS/PHS) Att. J at BOA 769-802.)  The Cumorah Credit Union account statements show many thousands more wired to Tasha Jn Paul during the same period from FSOL, FSMI, and Gold Dot.  (PX 24 (Vantusko SJ NHS/PHS) Att. K at CCU

Perhaps the single most illustrative piece of evidence concerning Tasha Jn Paul's major role in the NHS/PHS enterprise is her email of December 4, 2007.  (Br. Tr. at 188-92; Br. Ex. 14.)[11]  In this email, writing (as usual) as "Erika Roberts," Tasha Jn Paul discussed the enterprise's inability to keep up with the volume of written complaints (called "letters" in the email) and set forth a comprehensive program for division of responsibilities pertaining to "sales" and "customer service."  The tone and content of this email is entirely consistent with the substantial testimonial and documentary evidence showing her to be a central figure in the enterprise.  (See generally SJ Mem. at 7, 9-13, 25-27, 34, 42-44, 54-59.)  Moreover, the citations to undisputed evidence highlighted above with respect to FSMI and Gold Dot are just as applicable to Tasha Jn Paul (as operating manager of those entities) as they are to Linke Jn Paul (as their director).

## III.   THE JN PAULS ARE LIABLE FOR FULL EQUITABLE MONETARY RELIEF

Both of the Jn Pauls' responses resist the imposition of equitable monetary relief.  Their primary argument is that the FTC has not shown "direct knowledge of the claimed deceit that the other Defendants may have participated in."  (TJP Resp. at 4; LJP Resp. at 3.)  As demonstrated above, the legal standard for an award of monetary relief against an individual is satisfied by a showing of participation or authority along with "an awareness of a high probability of fraud along with an intentional avoidance of the truth."  *E.g.*, *Amy Travel*, 875 F.2d at 574.  The undisputed evidence concerning each of the Jn Pauls, as set forth in the Motion, meets this standard.

107-119.)

[11]  This email was submitted and cited with the FTC's original brief, but is attached again here for ease of reference.

The Jn Pauls also implicitly argue that any monetary relief should be restricted to the Jn Pauls' net incomes rather than the gross amounts taken from consumer bank accounts. (TJP Resp. at 2-3, LJP Resp. at 2-3.) This argument is most reasonably read as one suggesting that the Court should deduct the enterprise's expenses, e.g., "to pay these multiple call centers." (LJP Resp. at 2.) This ignores the legal standard cited in the FTC's Motion: it is the Commission's responsibility to offer calculations reasonably approximating consumers' net payments to the enterprise (i.e., payments less refunds), and then the burden shifts to the defendants to offer evidence to dispute the calculation. (SJ Mem. at 64-65.) This framework was recently examined and re-affirmed by the Second Circuit in *FTC v. Bronson Partners, LLC*, 654 F.3d 359, 2011 U.S. App. LEXIS 17203, at *19 (2d Cir. 2011). Moreover, the defendants may not deduct the costs associated with their unlawful acts. *Id*. at *37.

Neither of the Jn Pauls has offered any evidence to dispute the FTC's calculations of the total funds the NHS/PHS enterprise unlawfully debited from consumers' bank accounts. Even if they had offered such evidence, they certainly would not be entitled to deduct payments to the call centers that the enterprise paid to perform the direct work of abusing and lying to consumers.

## IV. STRICT INDUSTRY BANS ARE LAWFUL AND WARRANTED

Both Jn Pauls offer substantial pleas to the Court that they not be banned from telemarketing. (TJP Resp. at 4-5; LJP Resp. at 3-4.) They argue that the Court cannot award such relief, and (implicitly) in the alternative that it should not. The Court does, however, have authority to impose a ban. On the egregious facts of this case, such a ban is more than justified.

### A.      Courts May Award Injunctive Relief Including Industry Bans.

Seeking to avoid a judgment that prohibits them from engaging in telemarketing, the Jn Pauls erroneously claim that "the FTC lacks authority for any judgment that forbids [defendants] from participating (sic) or limiting employment opportunities."  (LJP Resp. at 3; TJP Resp. at 4.) To the contrary, numerous courts have imposed bans against FTC defendants enjoining them from participating in a particular line of business.  *E.g.*, *FTC v. Gill*, 265 F.3d 944, 957-58 (9th Cir. 2001) (ban on engaging in credit repair business); *FTC v. Global Mktg. Grp., Inc.*, 594 F. Supp. 2d 1281, 1290 (M.D. Fla. 2008) (ban on involvement with telemarketing operations); *FTC v. Neiswonger*, 494 F. Supp. 2d 1067, 1084 (E.D. Mo. 2007) (ban on marketing and selling business opportunities, including the telemarketing of such programs); *FTC v. Five Star Auto Club*, 97 F. Supp. 2d 502, 536 (S.D.N.Y. 2000) (ban on multi-level marketing).

Indeed, a federal district court in Nevada very recently issued a broad industry ban order against Tasha Jn Paul on the basis of her extensive involvement in deceptive and unfair acts and practices in online commerce.  *FTC v. Grant Connect, LLC*, No. 2:09 CV 01349-PMP-RJJ, 2011 U.S. Dist. LEXIS 123792, at *85-88 (D. Nev. Oct. 25, 2011).  In *Grant Connect*, the court permanently banned Tasha Jn Paul from (1) engaging in negative option marketing, continuity programs, preauthorized electronic fund transfers, or the use of testimonials, and (2) marketing and selling products related to grants, credit, business opportunities, and diet supplements or nutraceuticals.  The business activities at issue in *Grant Connect* did not involve telemarketing, however, and so no telemarketing ban was sought by the FTC in that action. Prohibiting Tasha Jn Paul (and her co-defendants) from engaging in telemarketing remains an important aspect of the relief sought in this action.

The Jn Pauls also argue that a telemarketing ban would "force [them] into involuntary servitude."  (LJP Resp. at 3; TJP Resp. at 4.)  The law is clear, however, that the Thirteenth Amendment is violated only in extremely limited circumstances, such as when someone is forced to labor as a result of physical coercion.  *Steirer v. Bethlehem Area Sch. Dist.*, 987 F.2d 989, 998-99 (3d Cir. 1993).  *See Grant Connect*, 2011 U.S. Dist. LEXIS 123792, at *86 n.7.  Where individuals have alternatives to performing the labor, there is no compulsion.  *Steirer, supra*, 987 F.2d at 1000; *Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454, 459 (2d Cir. 1996); *Zavala v. Wal-Mart Stores, Inc.*, 447 F. Supp. 2d 379, 384 (D.N.J. 2006).  "The fact that these choices may not be appealing does not make the required labor involuntary servitude."  *Steirer*, 987 F.2d at 1000.  *See also Immediato*, 73 F.3d at 459.

In this case, the FTC's proposed order banning defendants from engaging in telemarketing is prohibitive, not mandatory:  it only restricts defendants from doing something and does not require them to do anything.  As a matter of law, there is no compulsion and therefore no Thirteenth Amendment violation.  *Steirer, supra*; *Immediato, supra*.  Defendants have cited no cases finding such an order to be constitutionally infirm, and have a wide array of other types of employment from which to choose.  As indicated above, the fact that they may not like their options does not mean that the Thirteenth Amendment has been violated.  *Steirer, supra*; *Immediato, supra*.

**B.   Telemarketing Bans Are Appropriate in this Matter**.

The undisputed evidence demonstrates that the Jn Pauls were central figures in an enterprise that not only deceived and abused thousands of consumers via telemarketing, but that reinvented itself repeatedly to continue that conduct in the face of enormous numbers of complaints.  (SJ Mem. at 25-33.)  This history alone would be sufficient basis to impose a ban

against these serial wrongdoers, but the necessity of a ban is all the more emphasized by the manner in which they have responded to this action.  At every turn, the Jn Pauls have treated this proceeding and the authority of this Court with disdain.

### 1.    The Jn Pauls showed no respect for the 2008 Orders.

On May 15, 2008, Tasha Jn Paul was served with the *Ex Parte* Temporary Restraining Order and a subpoena.  (SJ Mem. at 30, 34.)  Commencing her pattern of evading responsibility for her conduct, she claimed to have no documents (including no evidence of payments) related to NHS/PHS entities despite the fact that her contemporaneous bank statements demonstrated otherwise.[12]  Moreover, she issued a gratuitous denial – through her counsel – that she had ever been known as "Erica [sic] Roberts."[13]  Her obfuscation had its intended result, requiring the FTC to gather other evidence – including St. Lucia corporate records and an additional witness – to show her involvement before submitting the Amended Complaint.[14]  Her obstructionist efforts belie her assertion that the FTC simply "waited" to name her as a defendant in the case.  (TJP Resp. at 3.)

In addition, the undisputed evidence shows that Tasha Jn Paul was involved with the creation of defendant Nevada Business Solutions (NBS), the front company incorporated on

---

[12]  See note 10, *supra*, citing bank statements.  In spite of these, Tasha Jn Paul executed an affidavit in which she denied having "any documents, including, but not limited to, any contracts, evidence of payments, and communications, referring to or relating to any and all of the parties" listed in the subpoena.  (PX 17 (Supplemental Vantusko) Att. M.)

[13]  PX 29, attached hereto, is a true and accurate copy of the May 2008 email exchange between the undersigned counsel and counsel for Tasha Jn Paul regarding her response to the subpoena.  The cited denial appears in the email dated May 21, 2008, at 9:38 p.m. (which, due to manner of printing, is the second to last email in the exhibit).

[14]  See PX 17 (Supplemental Vantusko) Att. D; PX 18.

May 27, 2008.  NBS was used to continue charging consumer victims after this Court's entry of temporary and preliminary injunctive relief designed to halt that activity.  (SJ Mem. at 9, 30-32.)

The sworn testimony of Arnold Harrison – the nominal president of NBS – is that he learned about NBS from Tasha Jn Paul.  (SJ Mem. at 9 n.18.)  When Harrison discovered the NBS account in his name in late 2008, he withdrew enough money from it "to find out who [was] going to call" him.  (Har. Tr. at 55.)  The first call he received on the matter, within hours, was from Tasha Jn Paul.  (Har. Tr. at 21-23, 29-32, 55.)  When asked in his deposition who would best know about any assets of NBS, or its business activities, Harrison answered directly: "Tasha Jn Paul."  (Har. Tr. at 63.)[15]

Moreover, as noted, when the enterprise resumed deceptive outbound telemarketing in early 2009, the undisputed evidence is that it was FSMI that was the contracting party with the telemarketing rooms.  (SJ Mem. at 32.)  After literally years of complaints of deceptive marketing and unauthorized billing, and after the commencement of this action and the entry of temporary and preliminary injunctive relief by this Court, FSMI was back at the same practices again.

### 2. The Jn Pauls showed no respect for the 2009 Preliminary Injunction.

Finally, the Jn Pauls' responses themselves continue the Jn Pauls' pattern of contempt for the law.  There is no contrition or acknowledgment.  Instead, the Jn Pauls defiantly seek to deflect all responsibility to others.  As demonstrated above, to the very end the Jn Pauls continue to deny – without record support – or ignore what is demonstrated by overwhelming evidence in

---

[15]  In her response, Tasha Jn Paul denies being "involved in the creation of any companies, businesses or billings mentioned *after* mid 2008."  (TJP Resp. at 3 (emphasis added).)  This is not a denial of involvement in the creation of NBS, which occurred in May 2008.

the form of testimony, documents, and declarations.  There is no prospect that they can be relied upon to reform their behavior without extraordinary measures.

As a remarkable topper, the Jn Pauls each accuse the FTC of being "disingenuous" for not seeking contempt sanctions against them for their willful violations of this Court's Preliminary Injunction of July 24, 2009 (Doc. #100).  (TJP Resp. at 4; LJP Resp. at 3.)  They admit freely that they have been working in the telemarketing industry in the Philippines despite being fully aware of the injunction against them, and tacitly admit that their work targets US consumers.  (TJP Resp. at 5 ("helping agents with their English").)  They suggest that this conduct is a reason that they should not be subject to a strict injunction.  But it is precisely because they have been so profoundly and repeatedly indifferent to the law and to the gravity of this Court's Orders that the FTC seeks stringent *permanent* relief.  The FTC sees no purpose in delaying entry of such permanent relief in order to raise and prosecute their current contempt.  Under the circumstances, the swift entry of a strict permanent order will be better protection for consumers.

## V.        CONCLUSION

For the foregoing reasons, and for the reasons stated in the original Memorandum in

Support of Plaintiff's Motion for Summary Judgment Against the NHS/PHS Defendants, the

FTC requests that the Court grant summary judgment against the seventeen NHS/PHS

Defendants and issue the requested Permanent Injunction.


Dated:  November 3, 2011                          Respectfully submitted,


                                                  s/Harris A. Senturia
                                                  HARRIS A. SENTURIA (LEAD COUNSEL)
                                                     (Ohio Bar #0062480)
                                                  CHRISTOPHER D. PANEK
                                                     (Ohio Bar #0080016)
                                                  MARIA DEL MONACO
                                                     (Ohio Bar #0067930)
                                                  Federal Trade Commission
                                                  1111 Superior Avenue, Suite 200
                                                  Cleveland, Ohio  44114
                                                  (216) 263-3420 (telephone)
                                                  (216) 263-3426 (facsimile)

                                                  Attorneys for Plaintiff
                                                  FEDERAL TRADE COMMISSION

                                                  ZANE DAVID MEMEGER
                                                  United States Attorney

                                                  MARGARET HUTCHINSON
                                                  Assistant United States Attorney
                                                  Chief, Civil Division

                                                  JOEL M. SWEET
                                                  PA ID #69498
                                                  Assistant United States Attorney
                                                  615 Chestnut Street, Suite 1250
                                                  Philadelphia, PA 19106
                                                  (215) 861-8581 (telephone)
                                                  (215) 861-8349 (facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Plaintiff's Reply in Support of Motion for Summary Judgment Against the NHS/PHS Defendants was served on the following via electronic filing (as to counsel for the Receiver) and via mail or courier or agreed means (as to parties unrepresented in this action), on this 3rd day of November, 2011:

PATRICIA M. HAMILL
ANDREW S. GALLINARO
Conrad O'Brien PC
1515 Market Street, 16th Floor
Philadelphia, PA 19102
(215) 864-9600

Counsel for the Receiver, Wayne D. Geisser

HARRY F. BELL, JR.
35 Benburb Road
Phoenixville, PA 19460

DONNA NEWMAN
510 N.E. 199th Terrrace
Miami, FL 33179

NHS SYSTEMS, INC.
c/o Harry F. Bell, Jr.
35 Benburb Road
Phoenixville, PA 19460

PHYSICIAN HEALTH SERVICE, LLC
510 N.E. 199th Terrace
Miami, FL 33179

PLUS HEALTH SAVINGS, INC.
c/o Harry F. Bell, Jr.
35 Benburb Road
Phoenixville, PA 19460

PHYSICIANS HEALTH SYSTEMS, INC.
c/o Harry F. Bell, Jr.
35 Benburb Road
Phoenixville, PA 19460

HEALTH MANAGEMENT, LLC
c/o Donna Newman
510 N.E. 199th Terrace
Miami, FL 33179

6676529 CANADA, INC.
c/o Kenneth F. Salomon, Esq.
Sternthal Katznelson Montigny sencrl / llp
Place du Canada, suite 1020
Montréal, Québec, Canada  H3B 2N2

NICOLE BERTRAND
c/o Kenneth F. Salomon, Esq.
Sternthal Katznelson Montigny sencrl / llp
Place du Canada, suite 1020
Montréal, Québec, Canada  H3B 2N2

BARRY KIRSTEIN
c/o Kenneth F. Salomon, Esq.
Sternthal Katznelson Montigny sencrl / llp
Place du Canada, suite 1020
Montréal (Québec) H3B 2N2

DAVID JAMES GREER
a/k/a DANNIE BOIE
8250 N Grand Canyon Dr, #1118
Las Vegas, NV 89166

FIRST STEP MANAGEMENT, INC.
c/o DuBoulay Anthony & Company
6 Brazil Street
Castries
Saint Lucia

GOLD DOT, INC.
c/o DuBoulay Anthony & Company
6 Brazil Street
Castries
Saint Lucia

LINKE JN PAUL
Sent via email to linkejp@gmail.com, as the
last mail to last known address was returned
undeliverable with no forwarding address

TASHA JN PAUL
Sent via email to writetasha@yahoo.com, as
the last mail to last known address was
returned undeliverable with no forwarding
address

JOHN E. BARTHOLOMEW
c/o Ryan N. Singleton, Esq.
Leavengood, Nash, Dauval & Boyle, P.A.
2958 1st Avenue North
St. Petersburg, FL 33713
(Counsel to Defendant Bartholomew for
purposes of bankruptcy proceedings)

INTERFACE MANAGEMENT, INC.
1426 Gulf To Bay, Suite E
Clearwater, FL 33755

BEGINNING AGAIN, INC.
1426 Gulf To Bay, Suite E
Clearwater, FL 33755


No mailing was attempted to
NEVADA BUSINESS SOLUTIONS, INC.,
and
PHS ENTERPRISES, INC.
as the last mailings to their registered agents
were returned undeliverable with no
forwarding address.


s/Harris A. Senturia
Counsel for the Plaintiff