UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>                    Plaintiff,<br><br>  v.<br><br>NHS SYSTEMS, INC., et al.,<br><br>                    Defendants. | CIVIL ACTION<br><br>No. 08-2215 |

November 29, 2011

## MEMORANDUM & ORDER

On May 3, 2011, I found Teledraft, Inc. to be in contempt of a prior order of this court, issued September 24, 2009, which had directed Teledraft to turn over $262,224.03 to a court-appointed Receiver ("the Turnover Order"). I then referred the matter to the Honorable M. Faith Angell for an evidentiary hearing on the appropriate amount of compensatory damages to be awarded to the Receiver for losses attributable to Teledraft's disobedience. After a hearing on July 7, 2011, Judge Angell ordered that Teledraft pay $56,181.55 to compensate the Receiver. Now pending before the court are objections from both Teledraft and the Receiver as to the amount of damages. For the reasons that follow, I will affirm the order in part and vacate it in part.

I.      **Background**

The elements of this dispute are well known to the parties, and I summarize them only briefly for context. These contempt proceedings are an outgrowth of a civil action

filed on May 13, 2008, by the Federal Trade Commission against several individuals and business entities alleged to have engaged in unlawful telemarketing.

On May 14, 2008, at the instance of the FTC, this court entered an *ex parte* temporary restraining order ("the XTRO") which in part enjoined any "ACH Network or other payment processor" from transferring or otherwise dissipating any assets held by or for the defendants. The order of May 14, 2008, also placed defendant NHS Systems, Inc. and its affiliates into receivership and appointed Wayne Geisser as Receiver. On June 10, 2008, this court entered a stipulated preliminary injunction ("the SPI"), which, in similar language, enjoined any "ACH Network or other payment processor" from transferring or otherwise dissipating assets held by or for the defendants.

Teledraft, while not one of the defendants named by the FTC in its May 13, 2008 complaint, is a payment processor of the sort contemplated in both the XTRO and the SPI. *See FTC v. NHS Sys., Inc.*, 708 F. Supp. 2d 456, 459 (E.D. Pa. 2009). In July 2008, the Receiver became aware of certain funds held by Teledraft for the defendants, which the Receiver asserted to be property of the Receivership estate. *Id.* at 461–62. Teledraft refused to return the funds sought by the Receiver.

On September 8, 2008, the FTC moved this court for an order requiring Teledraft to turn over $264,224.03 to the Receiver. That figure consisted of $57,328.89 which Teledraft had on hand and $206,895.14 which—according to the FTC and the

Receiver—Teledraft should have had on hand but which had been improperly deducted or otherwise dissipated by the payment processor. On September 24, 2009, as previously noted, this court ordered Teledraft to turn over $264,224.03 to the Receiver.

Teledraft filed a notice of appeal of the Turnover Order on October 5, 2009, and sought a stay of the order pending resolution of the appeal. By order dated December 10, 2009, I granted a thirty-day stay of the portion of the Turnover Order requiring Teledraft to pay over the disputed funds. Teledraft's appeal was subsequently dismissed by the Court of Appeals for want of jurisdiction. *FTC v. NHS Sys., Inc.*, No. 09-3899 (3d Cir. Jan. 8, 2010). The dismissal order from the Court of Appeals noted that "[n]on-parties [such as Teledraft] usually must be held in contempt of district court discovery orders before they have a right to appeal." *Id.*

Apparently, standing in contempt was thought to be a worthwhile price to pay for securing appellate review. Teledraft continued to refuse to obey the Turnover Order, and on March 17, 2010, the FTC moved this court for an order to show cause why Teledraft should not be held in contempt. On March 31, 2010, Teledraft opposed the sanctions sought by the FTC and instead asked the court merely to enter a finding of contempt for purposes of manufacturing an appealable order.

On May 12, 2011, I held Teledraft in contempt of the Turnover Order and ordered it to pay the Receiver at least $57,328.89 within seven days; to pay the balance of the $264,224.03 within fourteen days; and to "pay compensatory sanctions to the

Receiver—in an amount to be determined by the Honorable M. Faith Angell, United States Magistrate Judge—for *any and all losses arising from Teledraft's disobedience*," Contempt Order of May 12, 2011 ¶ 5 (Docket No. 154) (emphasis added). In an accompanying opinion, however, I declined to hold Teledraft in contempt of either the XTRO or the SPI—both of which applied to Teledraft notwithstanding that Teledraft was not a named defendant, and both of which Teledraft disobeyed. Memorandum Opinion of May 12, 2011, at 8 (Docket No. 153).

Teledraft filed a notice of appeal from the contempt order on May 19, 2011, and moved on the same day for a stay of the order. The contempt order was subsequently stayed *nunc pro tunc* from May 12, 2011 until the determination of compensatory damages by Judge Angell.

On July 7, 2011, following a hearing and written submissions, Judge Angell ordered Teledraft to pay compensatory sanctions to the Receiver of $56,181.55—a figure said to represent all of the Receiver's losses and counsel fees from "just prior to the filing of the contempt motion by the FTC (on September 8, 2008)[1] through the sanctions hearing before [Judge Angell] (July 6, 2011)." Judge Angell excluded, however, all of the Receiver's damages related to Teledraft's two appeals—calculated as time spent and fees incurred (1) between the filing of Teledraft's first notice of

---

[1] In fact, September 8, 2008, was not the date of the FTC's contempt motion but rather the date the FTC moved for the Turnover Order; as noted above, the contempt motion was filed on March 17, 2010.

4

appeal on October 5, 2009 and dismissal of that appeal on January 8, 2010, and (2) after the filing of the second notice of appeal on May 19, 2011, except as necessary to prepare for the sanctions hearing. Judge Angell also excluded, without elaboration, some expense entries whose relationship with the "investigation, preparation and presentation of the contempt petition" she deemed to have been inadequately demonstrated.

Objections to Judge Angell's order were then filed in this court by the FTC, the Receiver, and Teledraft. The form of their objections was somewhat anomalous—a joint stipulation incorporating by reference their prior submissions to Judge Angell. By order dated August 18, 2011, I ruled that such generalized objections failed to comply with Federal Rule of Civil Procedure 72, and I extended the deadline to file particularized objections to Judge Angell's order for an additional fourteen days. I also extended the stay of the contempt order pending this court's resolution of such particularized objections as might be forthcoming. On September 15, 2011, Teledraft and the Receiver each filed renewed objections, which are now before the court.

## II.  Objections

Teledraft argues that the proper starting date for compensatory sanctions ought to be September 24, 2009 (the date of the Turnover Order) rather than September 8, 2008, the date employed by Judge Angell (the date the FTC moved for the Turnover Order). Teledraft does not take issue with Judge Angell's other calculations and requests that

the total amount of sanctions be reduced to $5,334.30.

The Receiver has lodged three objections. First, he contends that Judge Angell erred in selecting September 8, 2008, as the starting date for compensatory sanctions. He argues that Judge Angell unduly limited the compensation awarded to costs related to "the investigation, preparation and presentation of the contempt petition" and that, under this court's finding of contempt, the Receiver is instead entitled to equitable compensation for all of Teledraft's disobedient conduct—running from May 14, 2008, when the XTRO was issued. Second, the Receiver objects to Judge Angell's unelaborated exclusion of certain fees and expenses. Third, the Receiver argues that Judge Angell erred when excluding expenses related to Teledraft's two appeals; the Receiver's position is that those two time periods of appeal-related exclusions ought to run from the date of the stay of this court's orders, rather than the date Teledraft filed its notices of appeal. The Receiver requests that the total amount of sanctions be increased to $121,236.73.

## III. Discussion

Judge Angell's order on compensatory sanctions concerns a nondispositive matter and will be set aside by this court only if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United*

*States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). Clear error thus requires something more than simple disagreement.

From differing perspectives, both the Receiver and Teledraft quarrel with Judge Angell's choice of the proper starting date for compensatory sanctions. There is no question that, under this court's May 12, 2011 opinion and order and the authorities cited therein, the Receiver is entitled to compensation for the costs of investigating, preparing, and presenting the motion for an order to show cause why Teledraft should not be held in contempt. That motion was filed on March 17, 2010, and the costs associated with it are undoubtedly a proper basis for an award of compensatory damages against a contemnor; neither the Receiver nor Teledraft says otherwise.

Judge Angell also awarded compensation for a period of time she described as spanning "the contempt litigation," beginning on September 8, 2008. That period might be more accurately described as spanning "the turnover litigation," as September 8, 2008, was the date on which the FTC moved this court for the Turnover Order.

I find that Judge Angell's choice of September 8, 2008 as the starting point for compensatory sanctions was neither clear error nor contrary to law. The date should not be later in time, as Teledraft seeks. In holding Teledraft in contempt of the Turnover Order, I specifically noted existing authority for the equitable award of "payment for the costs of past non-compliance." Memorandum Opinion of May 12, 2011, at 12 (Docket No. 153) (quoting *John T. v. Del. Cnty. Intermediate Unit*, 318 F.3d 545, 554 (3d Cir.

2003)).² The point of such an award is to compensate an opposing party in equity for losses demonstrably tied to a contemnor's disobedience. Teledraft has been in continuous disobedience of this court's orders since at least September 8, 2008. The Receiver would not have incurred the costs and expenses associated with the turnover litigation had Teledraft obeyed this court's preceding orders.

At the same time, I find that the starting date for compensatory damages should be no earlier than September 8, 2008. Although I have previously held that Teledraft was subject to both the XTRO (issued May 14, 2008) and the SPI (issued June 10, 2008), I have declined to hold Teledraft in contempt of either of those prior injunctions. Memorandum Opinion of May 12, 2011, at 7–8 (Docket No. 153). Teledraft is only in contempt of the Turnover Order. Setting the starting date for sanctions at May 14, 2008—the Receiver's preferred date—would fail to effectuate this distinction. September 8, 2008, is a sensible balance of the equities under the circumstances.

I now turn to the Receiver's two remaining objections. First, as explained above, Judge Angell excluded fees and expenses incurred during the pendency of Teledraft's

---

²*See also In re Linerboard Antitrust Litig.*, 361 F. App'x 392, 399 (3d Cir. 2010) ("The purpose of a compensatory fine is to restore the injured party to the position he would have held had the contemnor complied with the injunction."); *Robin Woods, Inc. v. Woods*, 28 F.3d 396, 401 (3d Cir. 1994) ("[T]here can be no doubt that the district court had the authority to order [the contemnors] to compensate [plaintiff] for the time and expense its management incurred in enforcing the district court's injunction."); *McDonald's Corp. v. Victory Invs.*, 727 F.2d 82, 87 (3d Cir. 1984) ("[C]ivil contempt may be employed to coerce the defendant into compliance with the court's order and to compensate for losses sustained by the disobedience.").

two appeals; the Receiver objects that the starting point for any such exclusion should not be—as Judge Angell reckoned—the dates on which Teledraft filed notices of appeal, but rather the dates on which this court stayed its orders.[3]  The purpose of the appeal-related exclusions was that those fees and expenses were not necessarily attributable to Teledraft's disobedience.  Although Teledraft's notices of appeal did not suspend its obligations under the Turnover Order (or the contempt order), it was not clear error to use the dates of the notices of appeal as a fair measure of when the Receiver's expenses ceased to be necessarily attributable to disobedient conduct in the district court.  The dates of the stays is not a clearly superior choice for these purposes.

Second, Judge Angell excluded time and expenses that she found "do not, based on the description provided by the Receiver and his Counsel, specifically relate to the investigation, preparation and presentation of the contempt petition."  The Receiver complains both that all the fees and costs it submitted to Judge Angell should have been included in the compensatory damages award and that Judge Angell has described her

---

[3]The Receiver objects only to the use of the notice-of-appeal dates.  He does not object in general to Judge Angell's decision to exclude expenses related to the appeals; any argument for an award of expenses relating to the appeals would now be waived.  *Cf. Schauffler v. United Assoc. of Journeymen & Apprentices of Plumbing & Pipe Fitting Indus.*, 246 F.2d 867, 870 (3d Cir. 1957) ("The determination of assessable items of cost in civil contempt is within the discretion of the court whose dignity has been offended, and it is not an abuse of that discretion to impose as a penalty the expenses incurred in defending the propriety of the original imposition in an appeal court.").  I note also that Teledraft's second appeal was stayed on June 17, 2011, *nunc pro tunc* to May 12, 2011, so the Receiver's objection only has any consequence as to Teledraft's first appeal.

exclusions so sparely that the Receiver is unable to challenge them.  The Receiver never moved for reconsideration or specification of Judge Angell's order and so perhaps should not be heard to complain before this court.  Nevertheless, I agree that, because they are unexplained, it is impossible to discern and review these selective exclusions in Judge Angell's calculations.  Further, Judge Angell's reference to only those fees specifically related to "investigation, preparation and presentation of the contempt petition" is arguably inconsistent with the broader authority to award equitable relief for the costs of a contemnor's disobedience (as described above).

Accordingly, in the order that follows, I will refer the matter once more to Judge Angell for the limited purpose of resolving the Receiver's objection to these unspecified exclusions of time and expenses.

* * * *

**AND NOW**, this 29th day of November, 2011, upon consideration of the July 7, 2011 Order of the Honorable M. Faith Angell (Docket No. 171) as well as the objections and responses thereto (Docket Nos. 193–195), it is hereby **ORDERED** that:

(1) The portion of the July 7, 2011 Order awarding compensatory damages to the Receiver beginning as of September 8, 2008, through July 6, 2011, and excluding expenses related to Teledraft's appeals is **AFFIRMED**;

(2) The portion of July 7, 2011 Order excluding other expenses as "not . . . specifically relate[d] to the investigation, preparation and presentation of the contempt petition" (*viz.*, the final sentence of the second paragraph of the July 7, 2011 Order) is **VACATED**;

(3) This matter is **REFERRED** to the Honorable M. Faith Angell, pursuant to

   28 U.S.C. § 636(b)(1)(A), for further findings on the amounts, referenced in paragraph (2), above, which were excluded from the award of compensatory damages in the July 7, 2011 Order and which are said by the Receiver to be unexplained; and

(4) The stay entered August 18, 2011 (Docket No. 186) is **EXTENDED** until the Honorable M. Faith Angell has made a final determination as to the amount of compensatory damages owed by Teledraft.

             BY THE COURT:

              /s/ Louis H. Pollak
             Pollak, J.